**John F. MORTELL, as the Commissioner of the Department of Insurance of the State of Indiana, Petitioner,**

**v.**

**MUTUAL SECURITY LIFE INSURANCE COMPANY, Respondent.**

**John M. HATCHER, as Trustee of the Whitley County Memorial Hospital Retirement Plan, et al., Appellants–Plaintiffs,**

**v.**

**INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, et al., Appellees–Defendants.**

**Dale L. HAUPERT, Individually and as Trustee of the John Cottrell Irrevocable Trust, Appellant–Plaintiff,**

**v.**

**INDIANA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, and John F. Mortell, as the Commissioner of the Department of Insurance of the State of Indiana, Appellees–Defendants.**

**No. 49A02–9408–CV–505.**

Court of Appeals of Indiana.

Aug. 31, 1995.

Alan Verplanck and David R. Steiner, Fort Wayne, for John M. Hatcher, et al.

James P. Posey, Fort Wayne, for Dale L. Haupert.

Pamela Carter, Attorney General of Indiana and Terry G. Duga, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

In this consolidated appeal, the Hatcher Appellants and the Haupert Appellants (collectively the Insureds) are the owners, either

individually or as trustees, of insurance annuity contracts (the Insurance Contracts) issued by Mutual Security Life Insurance Company (Mutual Life). Upon petition of the Commissioner of the Indiana Department of Insurance, the Marion Circuit Court declared Mutual Life insolvent and ordered it liquidated. As provided by statute,[1] the Commissioner was appointed as Mutual Life's liquidator.

Indiana Life and Health Insurance Guaranty Association (the Guaranty Association) is a nonprofit legal entity composed of all insurers who transact insurance in Indiana. The Guaranty Association, subject to the approval of the Commissioner, guarantees the covered insurance policies of an insolvent insurer. The Guaranty Association also assures payment of an insolvent insurer's contractual obligations and provides the necessary means to discharge those obligations. State law limits the Guaranty Association's liability for contractual obligations of an insolvent insurer to one-hundred thousand dollars in cash value or three-hundred thousand dollars for all benefits, with respect to any one life. IC 27–8–8–5($l$) (1993 Ed.).

In the liquidation proceeding, the Commissioner proposed to transfer the Insurance Contracts to MEGA Life and Health Insurance Company (MEGA). The proposed transfer was pursuant to the terms of an Agreement of Reinsurance and Assumption (the Agreement) entered into on December 14, 1992 by MEGA, the Commissioner, as liquidator, and the Guaranty Association.[2] To effect that transfer, the Commissioner filed a Verified Petition for Instructions Concerning Plan of Reinsurance of Certain Contracts (the Plan) with the trial court on December 16, 1992. The Plan incorporated the Agreement and provided that MEGA's assumption of the Insurance Contracts would be funded by part of Mutual Life's remaining assets and by a contribution made by the

1. IC 27–9–3–7(a)(1) (1993 Ed.).

2. The Agreement was executed by the National Organization of Life and Health Insurance Guaranty Associations (the National Association) on behalf of the Guaranty Association which is a member of the National Association. Under the

National Association's bylaws, the Guaranty Association was bound by the National Association's execution of the Agreement unless the Guaranty Association elected by January 6, 1993 not to participate in the Agreement. The Guaranty Association made no such election.

Guaranty Association in accordance with its statutory obligations. Both the Plan and the Agreement provided that they would take effect only upon review and approval by the trial court.

The Insureds objected to the proposed transfer, contending that the Guaranty Association's interpretation of its liability limits under IC 27–8–8–5($l$) would result in MEGA's assumption of the Insurance Contracts at less than their original value. This reduction in value, according to the Insureds, deprives them of a portion of their property interest in the Insurance Contracts. The trial court denied the Insureds' objections, but held that the Insureds could challenge the Guaranty Association's coverage limit determination by filing a complaint for declaratory judgment as an adversary proceeding within the liquidation case. The order also required the Guaranty Association to provide the Insureds with its interpretation of the effect of the IC 27–8–8–5($l$) limits on the Insurance Contracts.

The Guaranty Association then notified the Insureds that its interpretation of IC 27–8–8–5($l$) would result in the Insurance Contracts being assumed by MEGA at less than their original value, and the Hatcher Insureds and the Haupert Insureds each filed a complaint for declaratory judgment as an adversary proceeding to challenge that limitation. The Commissioner was named as a defendant in the declaratory judgment complaint.

The Commissioner moved to dismiss the Insureds' declaratory judgment complaints, alleging that those complaints failed to state a cause of action upon which relief could be granted because the Insureds had failed to exhaust available administrative remedies and the trial court lacked jurisdiction to grant the Insureds their requested relief against the Commissioner due to the doctrine of separation of powers.[3] The trial court granted the Commissioner's motion to dismiss, and the Insureds appeal.

We reverse.

**ISSUES**

1. Did the Insureds fail to exhaust administrative remedies?

2. Does the Insureds' declaratory judgment action violate the doctrine of separation of powers?

**DISCUSSION AND DECISION**

**Exhaustion of Administrative Remedies**

Our supreme court recently explained that when a party raises the defense of failure to exhaust administrative remedies, the asserted defense is "that the court is without subject matter jurisdiction and therefore *without the power* to hear the case brought before it." *Austin Lakes Joint Venture v. Avon Utilities, Inc.* (1995), Ind., 648 N.E.2d 641, 645 (emphasis in original). To resolve the initial question of the trial court's jurisdiction to hear the case, the Court said:

"[I]n order to determine whether a case is properly before the trial court, the court should examine each issue presented by the case. If at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory agency determination. Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the jurisdiction of an administrative or regulatory agency."

*Id.* at 646 (footnote omitted).

The Marion Circuit Court, the trial court here, has jurisdiction over petitions brought by the Commissioner to rehabilitate or liquidate insurance companies. IC 27–9–3–1, –5 (1993 Ed.). The Commissioner filed the Mutual Life liquidation in the trial court, and that court has jurisdiction over it. Furthermore, the Commissioner has never claimed that the trial court lacks jurisdiction over this

---

**3.** The Guaranty Association neither moved to dismiss the Insureds' declaratory judgment com-

plaint nor opposed this appeal.

case or over the Insured's declaratory judgment complaint; he only claims that the court lacks jurisdiction to enter declaratory relief against him.

Having established the trial court's jurisdiction over the case, our next step is to:

"review the issues in the case claimed to be matters within the purview of an administrative or regulatory agency to determine whether the doctrine of primary jurisdiction should be invoked, *i.e.,* whether the court, while retaining jurisdiction over the case, should refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision."

*Austin Lakes,* 648 N.E.2d at 646. Here, the Insureds seek an interpretation of IC 27–8–8–5(*l*), the statute which limits the Guaranty Association's liability for the contractual obligations of insolvent insurance companies. That issue arose within the context of a pending judicial liquidation proceeding and was raised by the Insureds when the Commissioner recommended judicial approval of a reinsurance agreement and plan which affected their rights in the Insurance Contracts. In addition to the general jurisdiction over domestic insurance company rehabilitations or liquidations referred to above, the General Assembly has also given the Marion Circuit Court summary jurisdiction over any proceeding by the Commissioner to hear and determine the rights of parties under a rehabilitation or liquidation. IC 27–9–3–22 (1993 Ed.).

The Commissioner recognized the trial court's jurisdiction over this case when he filed Mutual Life's liquidation proceeding and when he sought the court's approval of the Plan and the Agreement. The Commissioner, however, argues that the trial court's power of review and approval does not extend to interpreting the statute which defined the value of the Insurance Contracts as affected by the Plan and the Agreement. We cannot reconcile the Commissioner's claim that the statutory interpretation of IC 27–8–8–5(*l*) is reserved exclusively to the Commissioner with the legislature's broad grant of power and jurisdiction over such cases to the Marion Circuit Court, and so conclude that the Commissioner is in error.

Furthermore, statutory interpretation is a judicial function, performed by the courts. *See Board of Trustees of Pub. Employees Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732, 733 ("Law is the province of the judiciary."). The interpretation of IC 27–8–8–5(*l*) to determine the limits of the Guaranty Association's liability arises during the course of a pending insurance company liquidation. That interpretation affects the rights of the parties under the liquidation and is a judicial question, not an administrative one. The trial court supervising the liquidation has exclusive jurisdiction to interpret that statute and the Commissioner in his role as liquidator is an indispensable party to the action.

### Separation of Powers

The Insureds' general prayer for relief is sufficiently broad to encompass claims against the Commissioner for an interpretation of their rights under IC 27–8–8–5(*l*) and for an order enforcing those rights. Because the trial court dismissed the Insureds' complaints against the Commissioner without interpreting the statute, the trial court did not reach the question of whether it may order the Commissioner, in his administrative decision making, to comply with the court's interpretation of the statute; inasmuch as the trial court never reached that issue, neither do we. The only question before us is whether an action to declare the rights of the parties under IC 27–8–8–5(*l*) violates the separation of powers doctrine.

It is an elementary principle of state constitutional law that one branch of state government cannot exercise powers granted to another by our constitution. Ind. Const. art. 3, § 1. This principle greatly limits the judiciary's power to inquire into and interfere with the internal operations of the two other branches of state government. *See State ex rel Masariu v. Marion Sup.Ct. No. 1* (1993), Ind., 621 N.E.2d 1097, 1098.

It is an equally elementary principle of law, however, that statutory interpretation is a judicial function, performed by the courts. *See Miller,* 519 N.E.2d at 733. The relief sought here is the judicial construction

and interpretation of IC 27–8–8–5(*l*). Because it is within the province of the judiciary, the interpretation of that statute does not present the kind of question which requires that the courts defer to agency decision making, nor does it constitute judicial interference with the Commissioner's internal operations of his agency. *See Prosser v. J.M. Corp.* (1994), Ind.App., 629 N.E.2d 904, 907 ("Courts, not administrative agencies, are the entities with the expertise to resolve questions of statutory construction."). Judicial construction or interpretation of a statute, standing alone, does not violate article 3, § 1 of our state constitution.

Reversed.

SULLIVAN and DARDEN, JJ., concur.